# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF ARKANSAS
# FORT SMITH DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| Plaintiff(s) | ) | Case: | 2:23-CR-20004 |
| | ) | | |
| v. | ) | Judge: | Susan O. Hickey |
| | ) | | |
| ZACKARY KING | ) | | |
| _____ | ) | | |
| Defendant(s) | ) | | |

## SENTENCING MEMORANDUM FOR ZACKARY KING

### Introduction

1. August 22nd, 2024, started as a normal day like most others for Mr. King. Working as a Crawford County Sheriff Deputy, he was on patrol when a 911 call came through that an older lady at the Sargent's Sunoco gas station was threatened by a male who was reported to have a knife. Zackary responded to the call trying to find this threatening individual. A search around the gas station was conducted, but the individual was not found.

2. Not long after, the man was found in the vicinity of the Kountry Xpress gas station in Mulberry. Zackary responded as backup to the incident. Little did Zackary know the next hour would change his life forever.

### A. Zackary King Is an Honest Hardworking Young Man

3. Zackary King has lived a law-abiding life for nearly 28 years. His only violations are for following too closely and expired tags.[1] The first involvement with an actual criminal offense was this instant case.

4. This case is a total outlier of conduct and Zackary never set out to cause a problem.

---

[1] Presentence Investigation Report ("PSR"), July 14, 2024, at ¶ 110 – 111.

5.      Zackary works every day to provide for his wife, Sabrina King, and his child, Cooper King. He is the primary earner in his family and has worked at his same job since October of 2022. Zackary is also a member of the U.S. Air National Guard and has honorably served for nearly 10 years having started in 2014.

6.      Zackary's good characteristics are not out of place.  Indeed, the Government acknowledges that Zackary was truthful, that he was remorseful, and that he was sincere during all portions of the investigation.  Such traits are at the core of Zackary and they have been for many, many years.

7.      When this incident occurred, Zackary was out trying to do his best and come home to his family like hundreds of thousands of Police Officers do every day.  He didn't seek out this incident. Instead, the situation found him and had him making split second decisions to the best of his ability. Unfortunately, Zackary is human and made a mistake.

### B. Zackary's Mistake Does Not Warrant a Sentence of Imprisonment

8.      The sentencing factors will show that a sentence of imprisonment is heavy-handed and far outweighs what is a just, but necessary sentence in this case.  Because of the overly punitive nature of a sentence of imprisonment, this court should consider a sentence of probation.

### C. The History and Characteristics of Zackary King

*a. Zackary's Outstanding Works Performed Within the Community*

9.      In May of 2019, the Fort Smith River flooded.  Zackary volunteered to go with the Air Guard to help at the local community at the firehouse.  At this event the volunteers put together about 110,000 sandbags.  This work helped save about 100 homes.  The Air National Guard recognized Zackary's efforts and awarded him the Air Force Achievement Medal in 2019.  Zackary was not required to do this, but instead out of a sense of duty – offered to help.

                        *b.    Zackary's Remarkable Record of Supporting the Less Fortunate*

10.       Zackary also helped rebuild a community Boy's and Girl building in Japan. The building at the time was run down and required new framework. Zackary volunteered to be part of the unit, and he assisted with putting in new sections of earthquake resistant framing to the unit to help stabilize the building against future natural disasters.

                        *c.    Zackary's Volunteer Activities*

11.       While working in the jail as a sergeant, Zackary contributed some of his time in the department to help with recruiting by doing a career day at the Arkansas Technical University.

12.       Zackary also helps with his local community. In 2022, Zackary helped with his local t-ball group. For t-ball, the kids are roughly around ages 4 to 6 years old. Here, he coached and helped little children to have fun while learning sportsmanship and the basic rules of baseball.

## D. OBJECTIONS TO THE PRE-SENTENCE REPORT

13.       The court must resolve the objections to the pre-sentence report, which are in the addendum to the pre-sentence report.

<u>Objection #1</u>

14.       Zackary objected to the 2-level increase under USSG § 3A1.3. This case is based on an unlawful seizure. An officer seizes a person when he uses force to apprehend them.[2]

15.       Here, the offense guidelines have already incorporated this factor and that the person was unlawfully restrained or seized has been considered within the scope of a Fourth Amendment violation.[3] The sentencing guidelines give examples of restraint such as being tied, bound, or locked up. Here, Mr. King was involved in an altercation where the use of force of was authorized and is

---

[2] *Torres v. Madrid*, 592 U.S. 306, 309, 141 S. Ct. 989, 993 (2021).
[3] USSG § 3A1.3 cmt. n. 2.

wholly different from the general application and consideration of "restraint." Zackary was not striking someone while they were in handcuffs in the back of a car.

Objection #2 – 4

16. Mr. King remains that the relevant facts that were stipulated by the parties were outlined in the plea agreement.

Objection #5

17. Zackary objected to ¶ 89 of the PSR. When analyzing use of force, an inquiry must be made as to the officer's objective reasonableness.[4] It must be done considering the facts and circumstances confronting the officer.[5] Indeed, use of force must be analyzed moment by moment.[6] These moments between Defendant White and Zackary are not the same. Mr. King did not have similar knowledge or understanding that was possessed by any other defendant. At the time of the altercation, Zackary was unaware of the whereabouts of the knife that was alleged.

18. In civil matters, this circuit has previously held that each individual's liability must be independently assessed.[7] This principle is often followed "because an officer may be held liable only for his or her own use of excessive force."[8] Here, Zackary was wholly unaware of the actions being taken by Defendant White. This isn't surprising, because Officer Riddle was unaware of what Defendant White was doing too.[9] Zackary believes that this court should consider this. The defendants were not acting in concert with one another. Instead, they were independently operating and assessing a use of force situation that was thrust upon them unexpectedly. Each of the views,

---

[4] *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867 (1989).
[5] Ibid.
[6] *Plumhoff v. Rickard*, 572 U.S. 765, 777, 134 S. Ct. 2012, 2022 (2014).
[7] *Wilson v. Northcutt,* 441 F.3d 586, 591 (8th Cir. 2006).
[8] *McReynolds v. Schmidli*, 4 F.4th 648, 655 (8th Cir. 2021).
[9] PSR at ¶ 61-62.

facts, and understandings change the underlying basis and reasonableness of the force presented. Zackary and Defendant White were worlds apart in their understanding of the situation.

### E.  THE NATURE AND CIRCUMSTANCES OF THE OFFENSE WARRANT A VARIANCE

1.  Nature and circumstances of the offense

19. The Court should consider the initiating factors of this offense. Zackary did not seek out, plan, or otherwise set out to engage in criminal activity. Instead, Zackary responded to the assault of a fellow law enforcement officer. During this altercation, in which the assailant damaged personal property, caused injury to the law enforcement officers, Zackary made a mistake.

20. The Government goes to length to describe how the assailant was assaulted – but this is contrary to the stipulations and facts of the plea. In the agreement, the text clearly notes that there was (1) kick to the back and (1) strike to the midsection. These, and only these, uses of force were agreed to be improper.

21. Contrary to the Government's assertions – no other use of force was improper or unreasonable.[10] Indeed, all other allegations of improper force should be struck. The Governments manipulations of the stipulated facts should be barred from admission under the parol evidence rule as the government is seeking to redefine the scope and facts defining which uses of force were unreasonable. The Government's allegations run contrary to the use of force stipulations and the Government should be required to adhere to their agreement or otherwise be precluded from presenting unstipulated offense allegations. To provide important context, Counsel for Zackary King coordinated, and the Government made the applicable change that specifically set out all prior

---

[10] The Government's allegation and including of lawfully applied knees strikes as "King" assaulted RW is misleading at best. *See* Government's Sentencing Memorandum, Doc. 128 at pg. 2, ¶2.

conduct in the event from the (2) stipulated unreasonable applications of force. The Government agreed and separated the conducted in section v. from vi. in the plea agreement.[11]

    **2.**    <u>Need for sentence imposed</u>

22.    Under § 3553(a)(2)[12], Courts should consider the seriousness of the offense, the deterrence effect, protection of the public, and providing educational or training. Here, Zackary's life has been upended for the last two years. He is being charged with a misdemeanor offense and has plead guilty to a criminal offense. This is a significant punishment and stigma on its own. In accord with his plea agreement, he has voluntarily surrendered ever being a law enforcement officer – which was his foreseeable career up to this event.

23.    Zackary has little to no criminal history and is unlikely to ever return to this court. Being 28 years old, Zackary has avoided coming into trouble with the law aside from two traffic tickets. As Zackary is unlikely to reoffend in a criminal matter, a sentence of imprisonment would be overly punitive to deter conduct that is extremely unlikely to occur in the first place. Similarly, Zackary will no longer work in law enforcement. Accordingly, it is impossible for a similar event to occur as he would no longer be working in a similar capacity.

24.    Lastly, sending Zackary to prison would be counter to the factors listed under (D).[13] Zackary has a job and is gainfully employed. He is currently in the Armed Forces. Both in his current job and his reserve duty, he continues to learn, train, and grow. Sending Zackary to prison would not provide any necessary education or vocational skills as he is already properly functioning as a productive member of society.

---

[11] *See* Plea Agreement of Zackary King, Doc. 95, ¶4 v. – vi.
[12] 18 U.S.C. § 3553(a)(2).
[13] 18 U.S.C. § 3553(a)(2)(D).

    **3.**    <u>Sentences Available</u>

25.    This being a misdemeanor offense, the Court has a wide array of sentencing options available to it. As probation noted, Zackary is eligible for up to 5 years' probation because the offense is misdemeanor.[14]

    **F. THIS CASE WARRANTS CONSIDERATION FOR A DOWNWARD DEPARTURE**

    **1.**    <u>USSG §5K2.10 – Victim's Conduct</u>

26.    "If a victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense."[15] Here, the victim unquestionably initiated the encounter when he violently tackled a law enforcement officer attacking him. During the encounter, Zackary believed that the individual was still armed with a sharp knife as reported by the woman at the gas station. The victim presented as extremely dangerous because, despite having multiple officers present, decided to violently engage a law enforcement officer without provocation. Zackary attempted to subdue the individual and for all but two-strikes, utilized reasonable and lawful force to attempt to control the victim. The Court should consider a departure under this provision.

    **2.**    <u>USSG §5K2.13 - Diminished Capacity</u>

27.    Violent attacks are known to cause acute stress response in individuals. Here, Zackary was suffering under extreme stress as he was trying to protect a fellow officer. Despite reasonable application of force, the victim continued, and at one point ceased the actions. At the time of of the unlawful application of force, Zackary was exasperated, confused, and exhausted. He was under the effects of adrenaline and still operating with an understanding that the individual may be armed or has access to a knife. The Court should consider the application of this departure.

---

[14] 18 U.S.C. § 3561(c)(2); PSR at ¶ 156.
[15] USSG §5K2.10.

### 3. USSG §5k2.20 - Aberrant Behavior

In this instance, this is the only true criminal offense in 28 years has ever been subjected to. This is a single criminal action and single criminal occurrence. There was no planning. The criminal activity consisted of (2) strikes lasting over a duration of seconds. Zackary was not benefiting from time to make reasoned decisions and was operating under significant stress. The prohibitions under §5K2.20 are not applicable to this offense.[16]

### G. THE NEED TO AVOID UNWANTED SENTENCING DISPARITIES

#### 1. Probation's JSIN Information is Misleading

28. The probation office cites a defendant with a final criminal history of 17 and a category of 1 for criminal history. However, none of the information considers or separates which defendants were subject to felony prosecution and which were subject to misdemeanor. Based on the guideline, the offense level would top off at approximately 1 year for the guideline range. The charged offense and the points associated with it are more considered and in line with felony prosecutions – not those for misdemeanors. Accordingly, the Court should discount the sentencing information presented.

#### 2. A Sentence Of Imprisonment Would Be Disparate

29. Zackary should not receive a sentence that is unjustifiably disparate from sentences imposed in other similar excessive force cases. In determining a sentence, 18 U.S.C. § 3553(a)(6) instructs that the sentencing court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

30. This being a misdemeanor offense it is generally in a separate consideration and category from felony offenses. Even when compared to felony matters, the offense conduct of excessive force where officers have gone to jail are grossly different from Zackary's actions.

---

[16] USSG §5k2.20(C)(1)-(4).

31. In Gary, Indiana, a police officer placed a driver under arrest. "While the driver was handcuffed and not posing a threat to Peck or anyone around him, Peck slammed the driver's face and head against a police vehicle, breaking the man's tooth and causing him bodily injury."[17] Peck was sentenced to one-year and one day of incarceration.

32. In Jeffersonville, Indiana, Katie Crews was sentenced to two years of probation, 200 hours of community service, and a $5,000 fine for violating an individual's rights. Crews admitted during a plea hearing that she shot an individual with the pepper ball even though they were not a threat and standing on private property. Crews pleaded to one-misdemeanor count of unlawful force. Like Zackary, Crews agreed to no longer work in law enforcement.[18]

33. In Indianapolis, a Police Sergeant was sentenced to 1 year in prison for excessive force. This case facts showed that after using force to entirely subdue a suspect, that the officer "intentionally raised his right foot and drove it down onto [the victim's] head and face."[19]

34. In San Antonio, Argel Sierra, an officer of the Mills Police Department (Wyoming), unlawfully arrested a man without probable cause and used excessive force for the arrest. Sierra was charged with a felony deprivation of rights. During the unlawful arrest, Sierra unlawfully utilized a taser to the head of the victim. Sierra was sentenced to five-years of probation.[20]

35. In Syracuse New York, Officer Matthew Felitto was sentenced to a term of probation of 2 years, a fine of $7,500 dollars, and 100 hours of community service. Felitto was convicted as a felon.

---

[17] U.S. Dep't of Just., *Former Gary, Indiana Police Officer Sentenced for Using Excessive Force in Violation of Federal Civil Rights Law* (Sept. 12, 2023), https://www.justice.gov/opa/pr/former-gary-indiana-police-officer-sentenced-using-excessive-force-violation-federal-civil.

[18] U.S. Dep't of Just., *Former Louisville, Kentucky Police Officer Sentenced for Using Excessive Force* (Nov. 27, 2023), https://www.justice.gov/opa/pr/former-louisville-kentucky-police-officer-sentenced-using-excessive-force-0

[19] U.S. Att'y's Off., S. Dist. of Ind., *Suspended Indianapolis Police Sergeant Sentenced to 1 Year in Federal Prison for Using Excessive Force* (Aug. 3, 2023), https://www.justice.gov/usao-sdin/pr/suspended-indianapolis-police-sergeant-sentenced-1-year-federal-prison-using-excessive.

[20] U.S. Att'y's Off., D. Wyo., *Activity in U.S. Attorney's Office* (Sept. 1, 2023), https://www.justice.gov/usao-wy/pr/activity-us-attorneys-office-0.

Felitto intentionally kicked an individual in leg shackles and handcuffs several times in the face and upper chest with work boots causing bruising and a swollen lip.[21]

36. When looking at the exact conduct Zackary has plead to, a sentence of imprisonment would impose a severe disparity in punishment. A sentence of probation would be a just, but necessary sentence and Zackary would not be punished more greatly than individuals who intentionally committed more severe offenses.

**CONCLUSION**

37. For the reasons stated above, we respectfully request that the Court issue a sentence of probation. We respectfully submit that a sentence of probation would both fulfill the purposes of 18 U.S.C. § 3553(a) and best serve the interests of justice. We appreciate the Court's consideration of the points raised in this Memorandum and in the information submitted to the Probation Officer.

Dated: September 16, 2024.

Respectfully submitted,

/s/ Christopher Baker

Christopher H. Baker, Esq.
Arkansas Bar No. 2022124
Attorney for Zackary King
James Law Firm
1001 La Harpe Blvd.
Little Rock, Arkansas 72201
Telephone: (501) 375-0900
Email: Chris@Jamesfirm.com

---

[21] U.S. Att'y's Off., N. Dist. of N.Y., *Former Utica Police Officer Sentenced for Using Excessive Force* (May 10, 2023), https://www.justice.gov/usao-ndny/pr/former-utica-police-officer-sentenced-using-excessive-force.